# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON C. TINKER, | No. 2:13-CV-1475-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____ / | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's opposition thereto.

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 23, 2009. In the application, plaintiff claims that disability began on October 15, 2009. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 27, 2011, before Administrative Law Judge ("ALJ") Carol L. Buck. In a November 4, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): seizure disorder, obesity, residuals status post brain surgery, and anxiety;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work except: the claimant may never climb ladders, ropes, or scaffolds; he is able to occasionally climb ramps or stairs; he can occasionally stoop and crouch; the claimant must avoid all exposure to work hazards, such as moving machinery and/or unprotected heights; the claimant must have limited public contact;

4. The claimant is capable of performing his past relevant work as a cable installer and cable inspector;

5. Alternatively, considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on May 22, 2013, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in concluding that plaintiff's seizure disorder does not meet or medically equal an impairment listed in the regulations; and (2) the matter should be remanded to consider new medical evidence not previously available.

**A.   Listings Analysis**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

1985).

As to the listings, the ALJ stated:

Although the claimant has "severe" physical and mental impairments, objective findings and functional limitations do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations. . . . No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restrictions. At the hearing, the claimant indicates he is able to perform personal care tasks. He testified to problems with household chores, which primarily stem from physical impairments. The claimant advised that he spends a typical day caring for his son. The claimant stated that he must take breaks when performing activities (Ex. 6E, 11E and Hearing Testimony, 7/27/2011). Treatment records reflected the claimant had minimal mood symptoms (Ex. 11F, page 5). In their assessment, State agency found no medically determinable impairment related to mental allegations (Ex. 8F). That being said, the undersigned is giving the claimant the benefit of the doubt with a finding of mild restriction.

In social functioning, the claimant has moderate difficulties. At the hearing, the claimant testified he has custody of his son and tries to spend time with him on a regular basis (Hearing Testimony, 7/27/2011). In a statement, the claimant indicated that he has difficulty with confrontation and often loses train of thought during discussion (Ex. 6F0. Treatment records reflected some relationship issues with estranged wife (Ex. 11F). In their assessment, State agency concluded the claimant had no medically determinable mental impairment (Ex. 8F). Again, the undersigned is giving the claimant the benefit of the doubt, finding moderate difficulties in this area.

///

> With regard to concentration, persistence, or pace, the claimant has mild difficulties. At the hearing, the claimant testified to difficulty with concentration and attention. The claimant stated that he has problems completing tasks, and often loses his place (Ex. 6E, 11E and Hearing Testimony, 7/27/2011). A mental status examination showed concentration and attention within normal limits (Ex. 11F, page 11). In their assessment, State agency concluded the claimant had no medically determinable mental impairment (Ex. 8F). The undersigned finds the claimant has mild difficulties in this area.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration (Ex. 8F and 11F).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Specifically, the record is devoid of a medically documented history of a chronic organic mental disorder or at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and circumstances consistent with 12.02. Further, the record fails to establish medically documented findings of an anxiety disorder that results in complete inability to function independently outside the area of one's home per 12.06.

According to plaintiff, the ALJ erred by not discussing whether he meets the requirements of Listing 11.03 due to his seizure disorder. Plaintiff states that the ALJ does not "even mention Mr. Tinker's seizure disorder."

At the outset, the court notes that plaintiff is incorrect in asserting that the ALJ failed to mention plaintiff's seizures. As to seizures, the ALJ stated:

> The claimant has alleged disability by way of debilitating symptoms resulting from seizure disorder, obesity, residuals status post brain surgery, and anxiety. At the hearing, the claimant testified to multiple symptoms related to a past brain surgery. The claimant indicated that he developed seizures shortly after the surgery. The claimant advised that his seizures primarily occur when he is asleep. The claimant testified that he is unable to perform activity for 1 day after he suffers a seizure. Nevertheless, the claimant stated that he is "cleared" to drive through the Department of Motor Vehicles (Ex. 11E and Hearing Testimony, 7/27/2011).

5

> Of note, in his seizure questionnaire, the claimant reported he suffers seizures approximately 3 times per day. At that time, he indicated that he is able to resume activity after 15 minutes (Ex. 3E and 6E). . . .

In discussing plaintiff's credibility, the ALJ added:

> The claimant has provided conflicting information regarding the frequency of seizures. In his initial seizure questionnaire, the claimant indicated he experiences approximately 3 seizures per day (Ex. 3E). In another account, the claimant reported he has 4 or more seizures per day (Ex. 6E, page 1). At the hearing, the claimant stated that he primarily experiences seizures when he is sleeping or waking from a nap (Heating Testimony, 7/27/2011). Yet, treating physicians reported the claimant exhibited focal seizures in the left upper extremity every 10-12 days and only two grand mal seizures since onset (Ex. 13F, page 7). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely credible.[1]

Clearly, the ALJ discussed plaintiff's seizures.

As to the applicability of Listing 11.03, that listing requires non-convulsive epilepsy where there is detailed descriptions of the seizures which must occur more than once weekly after three months of treatment and be coupled with unconventional behavior or significant interference with activities of daily living. See 20 C.F.R. Pt. 404, Subpt. P., App. 1. In this case, treating sources noted focal seizures every 10-12 days. Dr. Sharma, who examined plaintiff, opined that plaintiff's focal seizures would only result in functional limitations to plaintiff's ability to drive, operate heavy machinery, or work at unprotected heights. Similarly, agency reviewing physicians Drs. Sheehy and Bayar opined that plaintiff was not significantly limited by his focal seizures. There is no notation in the record of unconventional behavior associated with seizures. Nor is there objective medical evidence of seizures occurring more than once weekly or of treatment for seizures. Finally, there is no objective evidence in the record of a significant interference with plaintiff's activities of daily living. Given this record, the court cannot conclude that the ALJ was incorrect in finding that plaintiff's impairments do

---

[1] Plaintiff does not challenge the ALJ's adverse credibility finding.

not meet or medically equal an impairment listed in the regulations, including seizure disorders outlined in Listing 11.03.

### B. New Evidence

A case may be remanded to the agency for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the prior record. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)). In order for new evidence to be "material," the court must find that, had the agency considered this evidence, the decision might have been different. See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). The court need only find a reasonable possibility that the new evidence would have changed the outcome of the case. See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984). The new evidence, however, must be probative of the claimant's condition as it existed at or before the time of the disability hearing. See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)). In Sanchez, the court concluded that the new evidence in question was not material because it indicated "at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing." Id. at 512 (citing Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

Plaintiff argues:

> . . .Mr. Tinker's extensive treatment in connection with his brain tumor continued following the ALJ's unfavorable decision. The new medical records associated with Mr. Tinker's continued treatment are material to this claim because they directly refute the ALJ's findings denying Mr. Tinker benefits. . . .

Plaintiff adds: "With respect to the "good cause" requirement for having failed to produce the new evidence at the hearing, Mr. Tinker meets that criteria because the new evidence consists of subsequent treatment records which did not exist at the time of the ALJ hearing."

/ / /

/ / /

In this case, the court finds that a remand to consider the new evidence is not warranted because, as plaintiff admits, the new evidence relates to periods of time after the hearing decision. As such, it is material to a new application but not the current decision.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is denied; and
2. The Clerk of the Court is directed to enter judgment and close this file.

DATED: October 10, 2014

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE